UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
DENISE WHITNEY,

                  Plaintiff,

          - against -

JETBLUE AIRWAYS CORPORATION,

                 Defendant.
-----------------------------------------------------X

**REPORT AND
RECOMMENDATION**

07 CV 1397 (CBA)

On April 3, 2007, plaintiff Denise Whitney filed this action against JetBlue Airways

Corp. ("JetBlue"), seeking damages for injuries incurred when a fellow passenger allegedly

assaulted plaintiff during the course of a JetBlue flight. By Notice of Motion dated October 7,

2008, defendant JetBlue moves for summary judgment dismissing plaintiff's claims. For the

reasons set forth below, the Court respectfully recommends that defendant's motion be granted.


FACTUAL BACKGROUND

On May 23, 2005, plaintiff boarded JetBlue Flight 53 from John F. Kennedy International

Airport ("JFK") to Tampa, Florida. (Def.'s 56.1 Stmnt ¶ 1; Pl.'s Resp. ¶ 1).[1] Plaintiff claims

that after a routine boarding and takeoff, the passenger in the seat behind her (referred to

hereinafter as "Passenger K") began to throw paper objects at her. (Def.'s 56.1 Stmnt ¶ 2; Pl.'s

Resp. ¶ 2). Plaintiff claims that Flight Attendant Vashti Saunders, of her own volition, spoke to

the passenger who was throwing the objects, and the conduct stopped. (Pl.'s Resp. ¶ 3; Def.'s

---

[1]Citations to "Def.'s 56.1 Stmnt" refer to the Rule 56.1 Statement of Defendant JetBlue
Airways Corp., submitted November 22, 2008. Citations to "Pl.'s Resp." refer to Plaintiff
Denise Whitney's Statement in Response to Defendant's Local Rule 56.1 Statement, submitted
December 15, 2008.

56.1 Stmnt ¶ 3). Ms. Saunders testified that she never spoke to the passenger (Def.'s 56.1 Stmnt ¶ 4), and did not observe the passenger throwing the objects, but if she had, she would have spoken to the passenger. (Pl.'s Resp. ¶ 4).

Defendant claims that the person sitting in the aisle seat in the row behind the plaintiff, Jake Rufli, also did not recall the throwing incident, nor did he observe the flight attendant speaking to the offending passenger. (Def.'s 56.1 Stmnt ¶ 5). Plaintiff disputes the accuracy of defendant's representation as to the witness' testimony, contending that the witness testified only that he observed the flight attendant leaning over to talk to the offending passenger after the kicking incident, not the throwing incident. (Pl.'s Resp. ¶ 5). Mr. Rufli explained that even if Passenger K had been throwing objects, he would not necessarily have noticed because he "wasn't staring at the woman for the entire takeoff" and was "trying to ignore her." (Id.) According to plaintiff's interpretation of his testimony, Mr. Rufli also stated that he would not necessarily have noticed if a flight attendant had come over to speak to Passenger K. (Id.) Mr. Rufli testified that he did not notice when plaintiff left her seat to complain about the later kicking incident, but did notice the extreme kicking by Passenger K. (Id.)

Defendant asserts that plaintiff did not complain to JetBlue or press her flight attendant call button during the course of the paper throwing incident. (Def.'s 56.1 Stmnt ¶ 6). Plaintiff asserts that she did not complain to Ms. Saunders because the seatbelt light was on and the passengers were thus instructed to remain in their seats. (Pl.'s Resp. ¶ 6; Whitney Tr.[2] at 11-13).

Plaintiff claims that shortly after, within 20 minutes of Ms. Saunders' first visit, the

---

[2]Citations to "Whitney Tr." refer to the transcript of the deposition of plaintiff Denise Whitney held on September 12, 2007, a copy of which is attached as Exhibit D to the Affirmation of Frederick P. Alimonti, submitted by defendants October 7, 2008.

2

passenger behind plaintiff began kicking her seat. (Def.'s 56.1 Stmnt ¶ 7; Pl.'s Resp. ¶ 7). According to plaintiff, the kicking continued for "definitely more than five minutes," and Jake Rufli testified that he recalled the entire incident lasting three to five minutes, with Passenger K "knead[ing]" or "walk[ing]" up and down the seat for "maybe thirty seconds, maybe a minute" before she began kicking. (Pl.'s Resp. ¶¶ 8-9; Def.'s 56.1 Stmnt ¶¶ 8-9). Plaintiff did not press the call button during the kicking incident. (Def.'s 56.1 Stmnt ¶ 10; Pl.'s Resp. ¶ 10).

According to Ms. Whitney, she got out of her seat despite "seeing black spots and [being] ready to pass out" and walked to the galley in the back of the plane. (Pl.'s Resp. ¶ 11; see also Def.'s 56.1 Stmnt ¶ 11). There, she spoke to a flight attendant and reported the incident. (Pl.'s Resp. ¶ 11; Def.'s 56.1 Stmnt ¶ 11). The flight attendant had the offending passenger change seats. (Def.'s 56.1 Stmnt ¶ 12).

Plaintiff had no "additional" conversations with the flight attendants about the incident until deplaning at which time she requested assistance in disembarking. (Pl.'s Resp. ¶ 13; Def.'s 56.1 Stmnt ¶ 13). She did not, however, request medical attention, nor did she seek to have the offending passenger detained. (Def.'s 56.1 Stmnt ¶ 14; Pl.'s Resp. ¶ 14).

The parties dispute whether Flight Attendant Saunders observed either the paper throwing incident or the kicking incident. The flight attendant denies having seen the paper throwing incident or speaking to the passenger about it. (Saunders Tr.[3] at 30-33). She also denies observing the kicking incident. (Id.) Plaintiff, on the other hand, claims that Saunders clearly saw the paper throwing incident, and while plaintiff did not observe whether any of the flight

---

[3]Citations to "Saunders Tr." refer to the transcript of the deposition of Vashti T. Saunders held on September 12, 2007, a copy of which is attached as Exhibit E to the Affirmation of Frederick P. Alimonti, submitted by defendants October 7, 2008.

attendants were in a position to see the kicking incident, she claims that Ms. Saunders told her she had. (Pl.'s 56.1 Stmnt[4] ¶¶ 5, 6, 8).

Plaintiff claims that defendant was negligent in failing to protect her from Passenger K and seeks damages for physical injuries resulting from the incident.

## DISCUSSION

Defendant moves for summary judgment contending that plaintiff's claims must be dismissed as preempted by the Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b) (2000). In the alternative, to the extent that the claims are not preempted, defendant argues that it had no duty to protect plaintiff from a spontaneous, unforeseeable act of a third person. Finally, JetBlue moves to preclude the testimony of plaintiff's expert, Dr. Michael Hynes, pursuant to Rule 702 of the Federal Rules of Evidence, arguing that he is not qualified to offer testimony on cabin crew procedures, conduct or standards.

A.  Summary Judgment Standards

It is well-settled that a party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990). Since summary judgment is an extreme remedy, cutting off the rights of the non-moving party to present a case to the jury, see Egelston v. State Univ. Coll. at Geneseo, 535 F.2d 752, 754 (2d

---

[4]Citations to "Pl.'s 56.1 Stmnt" refer to plaintiff's Rule 56.1 statement of material facts in dispute, submitted December 15, 2008.

Cir. 1976); <u>Gibralter v. City of New York</u>, 612 F. Supp. 125, 133-34 (E.D.N.Y. 1985) (stating

that summary judgment "is a drastic remedy and should be applied sparingly"), the Court should

not grant summary judgment unless "it is quite clear what the truth is and that no genuine issue

remains for trial." <u>Auletta v. Tully</u>, 576 F. Supp. 191, 195 (N.D.N.Y. 1983) (internal quotation

marks and brackets omitted), <u>aff'd</u>, 732 F.2d 142 (2d Cir. 1984). In addition, "'the inferences to

be drawn from the underlying facts . . . must be viewed in the light most favorable to the party

opposing the motion.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88

(1986) (quoting <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)).

   Once the moving party discharges its burden of proof under Rule 56(c), the party

opposing summary judgment "has the burden of coming forward with 'specific facts showing

that there is a genuine issue for trial.'" <u>Phillips v. Kidder, Peabody & Co.</u>, 782 F. Supp. 854, 858

(S.D.N.Y. 1991) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "provides that a party opposing a

properly supported motion for summary judgment may not rest upon mere allegation or denials

of his pleading." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 256. Indeed, "the mere existence

of *some* alleged factual dispute between the parties" will not by itself defeat a properly supported

motion for summary judgment. <u>Id.</u> at 247-48. Rather, enough evidence must favor the non-

moving party's case such that a reasonable jury could return a verdict in its favor. <u>Id.</u> at 248.

   In reversing a grant of summary judgment, the Second Circuit noted that the "'[t]rial

court's task at the summary judgment motion stage of the litigation is carefully limited to

discerning whether there are any genuine issues of material fact to be tried, not to deciding

them.'" <u>Quaratino v. Tiffany & Co.</u>, 71 F.3d 58, 65 (2d Cir. 1995) (quoting <u>Gallo v. Prudential

Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1224 (2d Cir. 1994)).

B. Preemption

Plaintiff claims that she was kicked and injured by a fellow passenger aboard a JetBlue flight from JFK to Tampa and that JetBlue failed to prevent or arrest the incident. Defendant contends the plaintiff's claims are preempted under the Federal Aviation Act of 1958 ("FAA"), 49 U.S.C. § 40103 et seq. and the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713, because plaintiff's claims all relate to services provided by JetBlue. (Def.'s Mem.[5] at 5).

Plaintiff argues that state common law tort claims are not preempted by the FAA and ADA. (Pl.'s Mem.[6] at 6-7 (citing Air Transport Ass'n of Am., Inc. v. Cuomo, 520 F.3d 218, 225 (2d Cir. 2008) (per curiam) (ruling that the New York Passenger Bill of Rights was preempted by the ADA as a state-enacted safety regulation but stating that "we have acknowledged that the FAA does not preempt all state law tort actions"))). Citing Trinidad v. American Airlines, 932 F. Supp. 521, 524 (S.D.N.Y. 1996), and Weiss v. El Al Israel Airlines, Ltd., 471 F. Supp. 2d 356, 360 (S.D.N.Y. 2006), plaintiff argues that when a tort claim relates to common law negligence and personal injury, it is not preempted because "safety" was explicitly omitted from the language of the ADA. (Pl.'s Mem. at 7-8). Plaintiff argues that her action here is not based on JetBlue's failure to provide services but rather that Jet Blue breached state common laws in failing to maintain the safety of its airline and prevent harm to its passenger. (Id. at 10).

Under the Supremacy Clause of the Constitution, any state law that conflicts with federal law is preempted and "without effect." Maryland v. Louisiana, 451 U.S. 725, 746 (1981); see

---

[5]Citations to "Def.'s Mem." refer to the Memorandum of Law submitted by defendant on October 7, 2008, in support of its motion for summary judgment.

[6]Citations to "Pl.'s Mem." refer to the Memorandum of Law submitted by plaintiff on December 15, 2008, in opposition to defendant's motion for summary judgment.

also Peterson v. Continental Airlines, Inc., 970 F. Supp. 246, 249 (S.D.N.Y. 1997). In CSX Transportation, Inc. v. Easterwood, the Supreme Court made it clear that in order to avoid "unintended encroachment on the authority of the States, . . . a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption." 507 U.S. 658, 664 (1993). Thus, preemption may only be found where it is the "clear and manifest purpose of Congress" to preempt state law. Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992) (internal quotation marks omitted). Health and safety is "an area traditionally regulated by the states pursuant to their police powers." Abdu-Brisson v. Delta Airlines, 128 F.3d 77, 83 (2d Cir. 1997) (citing DeBuono v. NYSA-ILA Med. & Clinical Servs. Fund, 520 U.S. 806, 814 (1997)).

Preemption may be expressly provided by a federal statute, or it may be implied. "Implied preemption arises when, 'in the absence of explicit statutory language, . . . Congress intended the Federal Government to occupy [a field] exclusively,' or when state law 'actually conflicts with federal law.'" Air Transp Ass'n of Am., Inc. v. Cuomo, 520 F.3d at 220 (quoting English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990)) (alterations in original).

1. Express Preemption Under the ADA

From 1958-1978, the FAA permitted airline passengers to pursue state common law or statutory remedies against airlines. Rombom v. United Air Lines, Inc., 867 F. Supp. 214, 218 (S.D.N.Y. 1994). However, in 1978, Congress enacted the ADA, which provides that a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation." 49

U.S.C. § 41713(b)(1). Defendant argues that this clause expressly preempts plaintiff's claims.

In enacting the ADA, Congress sought to improve the efficiency, quality, and innovation of the airline industry through competition. See In re Jetblue Airways Corp. Privacy Litigation, 379 F. Supp. 2d 299, 314 (E.D.N.Y. 2005). Congress enacted the preemption clause "'[t]o ensure that the States would not undo federal deregulation with regulation of their own.'" American Airlines v. Wolens, 513 U.S. 219, 222 (1995) (quoting Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378 (1992)). However, in enacting the ADA and its preemption clause, Congress chose not to repeal the "savings clause" of the FAA, which provides that "[a] remedy under this part is in addition to any other remedies provided by law." 49 U.S.C. § 40120(c).[7]

In Morales v. Trans World Airlines, Inc., the Supreme Court defined "related to" broadly, indicating that preemption should be found whenever a challenged law or action has "a connection with or reference to" fares, routes or services. 504 U.S. at 384. The court noted, however, that some state actions may affect rates, routes or services in "too tenuous, remote or peripheral a manner" to warrant preemption. Id. at 390. In American Airlines v. Wolens, the Court held that common law contract actions were not preempted by the ADA because an action seeking to hold an airline to its "own, self-imposed undertakings" did not involve any "state-imposed obligations." 513 U.S. at 228; see also In re Jetblue Airways Corp. Privacy Litigation, 379 F. Supp. 2d at 313.

---

[7]In its original wording, the clause provided that "[n]othing contained in this Act shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies." Shupert v. Continental Airlines, No. 00 CV 2743, 2004 WL 784859, at *2 (S.D.N.Y. Apr. 12, 2004) (quoting 72 Stat. 731, 798). The current version is substantially the same. Id. at *3 n.1.

"[T]he scope of the word 'services' has proven critical in preemption analysis with respect to tort claims." Galbut v. American Airlines, 27 F. Supp. 2d 146, 151 (E.D.N.Y. 1997). Although neither the Supreme Court nor the Second Circuit has precisely defined what constitutes "airline services," Weiss v. El Al Israel Airlines, Ltd., 471 F. Supp. 2d at 359, in Air Transport Ass'n of Am., Inc. v. Cuomo, the Second Circuit noted that "[a] majority of the circuits to have construed 'service' have held that the term refers to the provision or anticipated provision of labor from the airline to its passengers and encompasses matters such as boarding procedures, baggage handling, and food and drink — matters incidental to and distinct from the actual transportation of passengers." 520 F.3d at 223. An alternative approach taken by the Third and Ninth Circuits defines "service" more narrowly to exclude matters incidental to transportation. See id. (citing Charas v. Trans World Airlines, 160 F.3d 1259, 1261 (9th Cir. 1998) (en banc)), and Taj Mahal Travel v. Delta Airlines, 164 F.3d 186, 193-94 (3d Cir. 1998)). Although the court in Air Transport did not explicitly adopt the broader definition, it concluded that the narrow approach was inconsistent with a recent Supreme Court decision interpreting a similar preemption provision included in legislation relating to the trucking industry. Id. at 223 (citing Rowe v. N.H. Motor Transp. Ass'n, 128 S. Ct. 989, 996, 998 (2008)). The court therefore concluded that a New York statute requiring airlines to provide certain services during lengthy ground delays was preempted by the ADA. Id.

The Air Transport court did not address the question of whether and to what extent state tort claims are preempted,[8] and courts in this circuit have come to differing conclusions on the

---

[8]As discussed below, there is ample district court caselaw in this circuit on the scope of the ADA preemption clause, and much of it addresses the issue in the context of tort claims. However, in its discussion of express preemption, the Air Transport court did not cite a single

issue. Compare Trinidad v. American Airlines, 932 F. Supp. 521 (finding no preemption of negligence claims against airline where plaintiffs alleged serious injuries resulting from severe in-flight turbulence), and Peterson v. Continental Airlines, Inc., 970 F. Supp. 246 (S.D.N.Y. 1997) (finding no preemption where claims of false arrest, negligence, assault and battery were brought against airline after a seating conflict), with Galbut v. American Airlines, 27 F. Supp. 2d 146 (finding preemption of slander, false arrest, false imprisonment and negligence claims where airline required passenger to pay for upgrade and accused him of theft); see also Rombom v. United Air Lines, Inc., 867 F. Supp. 214 (finding preemption of claims based on rude treatment during boarding and captain's decision to return to the gate, but no preemption of claims arising from subsequent arrest of plaintiff at the behest of the airline). The Second Circuit has noted the difficulty of applying the ADA preemption clause and concluded that it must be applied "on a case-by-case basis." Abdu-Brisson v. Delta Airlines, 128 F.3d at 85-86; see also In re Jetblue Airways Corp. Privacy Litigation, 379 F. Supp. 2d at 314.

Some courts have suggested that there is never preemption of state law personal injury actions, see, e.g., Stagl v. Delta Air Lines, Inc., 849 F. Supp. 179, 182 (E.D.N.Y. 1994), rev'd on other grounds, 52 F.3d 463 (2d Cir. 1995); Dudley v. Business Express, Inc., 882 F. Supp. 199, 206 (D.N.H. 1994); Jamerson v. Atlantic Southeast Airlines, 860 F. Supp. 821, 826 (M.D. Ala. 1994), and the trend in the early- to mid-nineties was strongly away from preemption of common law claims. See Trinidad v. American Airlines, 932 F. Supp. at 525 (noting that district courts in

district court case from within this circuit, suggesting that, contrary to defendant's suggestion, it did not intend to imply anything one way or another regarding preemption of tort claims. See Air Transport Ass'n of Am., Inc. v. Cuomo, 520 F.3d at 222-24; (see also Reply Memorandum of Law, submitted by defendant on December 24, 2008, in support of its motion for summary judgment ("Def.'s Rep. Mem."), at 2).

this circuit ruling on the issue had "almost always" ruled against preemption); Pittman v. Grayson, 869 F. Supp. 1065, 1072 (S.D.N.Y. 1994) (noting that rulings in this circuit on claims invoking "traditional elements of tort law — suing for personal injuries sustained in airport terminals, during flights, or at the hands of airlines employees or fellow passengers — overwhelmingly incline against federal preemption"). These courts generally reasoned that given that the primary purpose of the ADA was to allow more competition among airlines, the preemption clause was not intended to reach many common law negligence claims. See, e.g., Stagl v. Delta Air Lines, Inc., 849 F. Supp. at 182; Sedigh v. Delta Airlines, 850 F. Supp. 197, 200 (E.D.N.Y. 1994) (holding that "[t]he proper focus should be on whether or not the specific common law action addresses matters about which the airlines wish or are likely to compete"); see also American Airlines v. Wolens, 513 U.S. at 242 (O'Connor, J., concurring in the judgment and dissenting in part) (arguing that Morales does not require that "personal injury claims against airlines are always pre-empted").

In recent years, courts in this circuit have generally concluded that some, but not all, state tort claims are preempted. See, e.g., Farash v. Continental Airlines, Inc., 574 F. Supp. 2d 356, 363-64 (S.D.N.Y. 2008); Ruta v. Delta Airlines, Inc., 322 F. Supp. 2d 391, 400 (S.D.N.Y. 2004). Some courts have suggested that negligence claims based on "access to flights" are preempted by the ADA. See Ruta v. Delta Airlines, Inc., 322 F. Supp. 2d at 399 (citing cases). These courts have held that claims based on over-booking and bumping of passengers are preempted as related to "services." See id. Claims relating to rude treatment by flight personnel have also been held to be preempted because such treatment generally arises during the course of services afforded to passengers of the airline. See Farash v. Continental Airlines, Inc., 574 F. Supp. 2d at 359-60,

11

366 (holding preempted a claim based on flight attendant's "harass[ment]" of passenger during flight, including tone of voice and "inferior service"); Galbut v. American Airlines, 27 F. Supp. 2d at 152 (holding preempted a claim based on wrongful and "overbearing" accusation that passenger stole upgrade stickers); Rombom v. United Air Lines, Inc., 867 F. Supp. at 223 (holding preempted a claim based on rude reprimands during boarding); Cannava v. USAir, Inc., No. 91 CV 30003-F, 1993 WL 565341, at *6 (D. Mass. Jan. 7, 1993) (holding preempted a claim based on ticket agent's "rude[]" and "insulting[]" treatment).

Similarly, "[c]ourts in [the southern] district have routinely held that security-related decisions and actions, including the decision to notify the captain of a potentially dangerous passenger and to have the passenger physically removed, are airline services." Farash v. Continental Airlines, Inc., 574 F. Supp. 2d at 365 (citing Ruta v. Delta Airlines, Inc., 322 F. Supp. 2d at 400-01, and Rombom v. United Air Lines, Inc., 867 F. Supp. at 223). In Rombom, the court found that the decision whether to transport a passenger implicates a service, and thus the claims raised by the plaintiff stemming from the captain's decision to return to the gate so that she could be removed from the plane were preempted under the ADA. 867 F. Supp. at 223-24. Indeed, the FAA expressly permits "an air carrier . . . [to] refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety." 49 U.S.C. § 44902(b); see also Adamsons v. American Airlines, Inc., 58 N.Y.2d 42, 47, 444 N.E.2d 21, 24, 457 N.Y.S. 2d 771, 774 (1982) (holding that an airline's decision to reject a passenger, "if exercised in good faith and for a rational reason," must be given deference because airlines must often "make such decisions on the spur of the moment, shortly before takeoff, without the benefit of complete and accurate information").

On the other hand, claims for false arrest or discriminatory treatment have generally been held not to be preempted. See Farash v. Continental Airlines, Inc., 574 F. Supp. 2d at 365-66; Peterson v. Continental Airlines, Inc., 970 F. Supp. at 250-51; Rombom v. United Air Lines, Inc., 867 F. Supp. at 224; Donkor v. British Airways Corp., 62 F. Supp. 2d 963 (E.D.N.Y. 1999). In Rombom, even though claims based on rude treatment during boarding and the captain's decision to return to the gate were preempted, claims arising from the subsequent arrest of the plaintiff at the behest of the airline were not preempted. Rombom v. United Air Lines, Inc., 867 F. Supp. at 224. Similarly, in Farash, while claims based on the alleged harassment of the plaintiff by flight attendants were preempted, the claims that the plaintiff was asked to change seats on a discriminatory basis and that he was reported to an air marshal for malicious and discriminatory reasons were not preempted. Farash v. Continental Airlines, Inc., 574 F. Supp. 2d at 365-66. In Donkor, the court held that claims based on an airline's failure to direct the plaintiff to her connecting flight, which resulted in her detention by immigration officials, were not preempted. Donkor v. British Airways Corp., 62 F. Supp. 2d at 973.

Negligence claims arising from physical injuries caused directly or indirectly by the conduct of airline personnel have also generally been held not to be preempted. See Luciano v. Trans World Airlines, No. 96 CV 3999, 1998 WL 433808, at *3 (E.D.N.Y. July 28, 1998) (finding no preemption where passenger fell at security checkpoint); Trinidad v. American Airlines, 932 F. Supp. at 526 (finding no preemption where passengers were injured during severe in-flight turbulence); Stagl v. Delta Air Lines, Inc., 849 F. Supp. at 182-83 (finding no preemption where passenger fell in baggage claim area); Heller v. Delta Air Lines, No. 92 CV 1937, 1993 WL 330093, at *1-2 (S.D.N.Y. Aug. 25, 1993) (finding no preemption where bag fell

from overhead compartment). In addition, in two recent cases, district courts held that a federal standard of care applied to the plaintiffs' state negligence claims, <u>see</u> discussion <u>infra</u> at 17-18, but did not consider whether the causes of action themselves were expressly preempted by the ADA. <u>See</u> <u>Shupert v. Continental Airlines</u>, No. 00 CV 2743, 2004 WL 784859 (S.D.N.Y. Apr. 12, 2004) (permitting plaintiff to proceed with negligence claim where object fell from overhead compartment); <u>Curtin v. Port Auth. of N.Y. & N.J.</u>, 183 F. Supp. 2d 664 (S.D.N.Y. 2002) (permitting plaintiff to proceed with negligence claim where injuries were sustained during emergency evacuation of plane).

Unlike these negligence cases, here, plaintiff alleges that the injuries were inflicted intentionally by Passenger K and that JetBlue failed to reasonably anticipate her conduct. Specifically, plaintiff alleges that the flight attendant should have known that Passenger K was potentially dangerous and prevented her from ferociously kicking plaintiff's seat. This case contains no false arrest or discrimination claim of the type considered in <u>Farash</u>, <u>Rombom</u>, or <u>Donkor</u>. Rather, plaintiff's claims resemble those addressed in <u>Farash</u> and <u>Rombom</u> which implicate the safety concerns caused by potentially disruptive passengers. The response of the flight attendant to Passenger K's behavior directly affected JetBlue's provision of an airline service to its passengers — namely, ensuring their safety and comfort during the flight.

Plaintiff's position amounts to an argument that the state may impose its own requirements on the actions an airline's flight attendants may take in controlling an unruly passenger. In <u>Air Transport</u>, the Second Circuit concluded that the New York legislature's attempt to impose certain requirements on airlines regarding the provision of water and restroom facilities threatened a "'patchwork of state service-determining laws, rules, and regulations'" that

would be inconsistent with the ADA's preemption clause. Air Transport Ass'n of Am., Inc. v. Cuomo, 520 F.3d at 223-24 (quoting Rowe v. N.H. Motor Transp. Ass'n, 128 S. Ct. at 996). Here, where plaintiff argues that under state law the flight attendants were negligent in not taking more aggressive action against Passenger K, a similar concern arises that different states might impose differing standards and requirements on an airline faced with a disruptive passenger.

When considering whether tort claims are preempted by the ADA, a number of courts have relied on a three-part test set forth by Judge Sotomayor in Rombom v. United Air Lines. See, e.g., Farash v. Continental Airlines, Inc., 574 F. Supp. 2d 356, 363 (S.D.N.Y. 2008) (applying Rombom); Ruta v. Delta Airlines, Inc., 322 F. Supp. 2d 391, 400 (S.D.N.Y. 2004) (noting that although courts in this circuit have reached "conflicting determinations" on whether various state tort claims are preempted, "[i]n doing so . . . they generally apply [Rombom]"). But see Kahn v. American Airlines, No. 08 CV 5246, 2008 WL 5110852, at *3-5 (S.D.N.Y. Nov. 26, 2008) (analyzing issue without reference to three-part Rombom test); Weiss v. El Al Israel Airlines, Ltd., 471 F. Supp. 2d at 359 (noting two separate lines of cases, one based on Rombom and one "exemplified" by Trinidad v. American Airlines). Application of the Rombom test reinforces the Court's conclusion that plaintiff's claims are preempted.

Under Rombom, the court first asks whether the activity at issue is an "airline service." Id. at 221. If it is, then the next question is whether the claim affects the airline service "directly or tenuously, remotely or peripherally." Id. at 222 (citing Morales v. Trans World Airlines, Inc., 504 U.S. at 390). If the state claims have only an incidental or tenuous effect on the airline service, then there is no preemption; if there is a direct effect, the court must determine if "'the underlying tortious conduct was reasonably necessary to the provision of the service. . . . [I]f the

tortious act did not occur during the service . . . or . . . did not further the provision of the service in a reasonable manner, then the state tort claim should continue.'" Ruta v. Delta Airlines, Inc., 322 F. Supp. 2d at 400 (quoting Rombom v. United Air Lines, Inc., 867 F. Supp. at 222) (alterations in original).

Here, it is clear that the crew's role in regulating passenger conduct, which helps ensure the safety of all on board, constitutes part of the ordinary services rendered by airline personnel. It is also clear that the flight attendant's reaction to the behavior of Passenger K directly affected this service. The Court further concludes that under the third prong of the Rombom test, the flight attendant's responses to Passenger K — namely, speaking with her after the throwing incident and moving her to a different seat after the kicking incident — were "reasonably necessary to the provision of the service" of ensuring the safety and comfort of passengers. In other words, the flight attendant's actions (or inaction) came in the course of provision of a service. See In re Jetblue Airways Corp. Privacy Litigation, 379 F. Supp. 2d at 316 (applying Rombom to claims involving the use of passenger data).[9]

Accordingly, the Court concludes that plaintiff's claims are preempted by the ADA, and respectfully recommends that defendant's motion for summary judgment be granted. In the event

---

[9]The Court notes that defendant also cites two district court cases from the Ninth Circuit in which tort claims arising from harm caused by other passengers were held to be preempted. (Def.'s Mem. at 10) (citing Stone v. Continental Airlines, 905 F. Supp. 823 (D. Haw. 1995) (finding preemption where plaintiff was punched without provocation by another passenger), and Costa v. American Airlines, 892 F. Supp. 237 (C.D. Cal. 1995) (finding preemption where bag fell on plaintiff after another passenger opened the overhead compartment)). The Court has not relied on these cases because their holdings rested on the Ninth Circuit's ruling in Harris v. American Airlines, 55 F.3d 1472 (9th Cir. 1995), which was subsequently overruled by the *en banc* decision in Charas v. Trans World Airlines, 160 F.3d 1259. As discussed in Air Transport, however, the Supreme Court has recently cast doubt on the continued viability of Charas. See supra at 9.

16

the district court should come to a different conclusion on the issue of express preemption, this Court has also considered defendant's arguments regarding implied preemption and has addressed the merits of plaintiff's claims.

 2. Implied Preemption Under the FAA

 Defendant argues that the FAA's air safety regulations are so comprehensive as to preempt the field of air safety and that plaintiff's claims are therefore impliedly preempted. (Def.'s Rep. Mem. at 7-8). Defendant does not elaborate on this argument, but merely cites the Second Circuit's statement in Air Transport that other circuits and several courts within this circuit have reached this conclusion. See Air Transport Ass'n of Am., Inc. v. Cuomo, 520 F.3d at 225 (citing Curtin v. Port Auth. of N.Y. & N.J., 183 F. Supp. 2d at 671). Although the court in Air Transport suggested that the state legislation regarding ground delays at issue in that case might have been preempted under this theory, it did not reach any conclusion on the matter and declined to "address the scope of any FAA preemption." Air Transport Ass'n of Am., Inc. v. Cuomo, 520 F.3d at 225. Moreover, the court stated that while "we have acknowledged that the FAA does not preempt all state law tort actions," id. (citing In re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975, 635 F.2d 67, 75 (2d Cir. 1980)), "the FAA has a savings clause that specifically preserves these actions." Id. (citing 49 U.S.C. § 40120(c)).

 Two district courts in this circuit have addressed this issue in the context of common law negligence claims and concluded that the FAA mandates a federal standard of care for airline safety. See Shupert v. Continental Airlines, 2004 WL 784859, at *6 (applying federal standard of care where injuries were caused by object falling from overhead compartment); Curtin v. Port

17

Auth. of N.Y. & N.J., 183 F. Supp. 2d at 671 (finding that federal standard of care applied where injuries were sustained during emergency evacuation of plane). However, in Shupert, the court did not find plaintiff's claim itself preempted but merely applied this federal standard of care to the plaintiff's state law cause of action. See Shupert v. Continental Airlines, 2004 WL 784859, at *6-8. In Curtin, the court did not address the viability of the plaintiff's claims but only whether the court had subject matter jurisdiction over them as raising a federal question. See Curtin v. Port Auth. of N.Y. & N.J., 183 F. Supp. 2d at 671.

The relevant federal standard applied in Shupert provides that "'[n]o person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.'" Shupert v. Continental Airlines, 2004 WL 784859, at *7 (quoting 14 C.F.R. § 91.13(a)). It is not clear, however, whether this standard differs appreciably from New York common law. Since neither party addresses that question or addresses the merits of plaintiff's claims under this federal standard, the Court will address the merits of plaintiff's claims under New York common law and will assume that the federal standard is no more stringent than the state standard. As discussed below, the court concludes that even under the state standard, plaintiff has failed to present sufficient evidence to sustain her claims.

## C. Negligence Claims

Proceeding to the merits of plaintiff's claims, JetBlue contends that summary judgment should be granted in its favor because it had no duty, nor did it breach any duty to protect plaintiff from the spontaneous, unforeseeable and wrongful act of the other passenger. Conceding that an airline "owes a duty to its passengers to exercise reasonable care for their

safety" (Def.'s Mem. at 11 (citing <u>Stagl v. Delta Airlines, Inc.</u>, 52 F.3d 463, 471 (2d Cir. 1995);

<u>Plagianos v. American Airlines, Inc.</u>, 912 F.2d 57, 59 (2d Cir. 1990)), defendant nevertheless

argues that it had "no duty to control actions of third persons so as to prevent them from harming

others." (<u>Id.</u> (citing <u>D'Amico v. Christie</u>, 71 N.Y.2d 76, 88, 518 N.E.2d 896, 524 N.Y.S.2d 1, 6

(1982)). Defendant contends that the offending passenger committed a "sudden unanticipated

act" and that plaintiff failed to show that JetBlue was, or should have been aware of the need to

control this passenger's conduct. (<u>Id.</u>)

    1.   <u>Standards</u>

In order to hold defendant liable for negligence under New York law, there must be a

showing that: 1) defendant owed plaintiff a duty of care; 2) defendant breached that duty; and 3)

plaintiff suffered an injury as a proximate result of that breach. <u>See</u> <u>Stagl v. Delta Airlines, Inc.</u>,

52 F.3d at 467; <u>see also</u> <u>Hamilton v. Beretta USA Corp.</u>, 96 N.Y.2d 222, 232, 750 N.E.2d 1055,

1060, 727 N.Y.S.2d 7, 12 (2001); <u>Solomon v. City of New York</u>, 66 N.Y.2d 1026, 1027, 489

N.E.2d 1294, 1294, 499 N.Y.S.2d 392, 392 (1985). It is the responsibility of the court in the first

instance to determine as a matter of law if a duty existed. <u>See</u> <u>Kazanoff v. United States</u>, 945

F.2d 32, 36 (2d Cir. 1991); <u>see also</u> <u>Sawyer v. Wight</u>, 196 F. Supp. 2d 220, 226 (E.D.N.Y. 2002)

(citing <u>Darby v. Compagnie Nat'l Air France</u>, 96 N.Y.2d 343, 347, 753 N.E.2d 160, 162, 728

N.Y.S.2d 731, 733 (2001)); <u>Purdy v. Public Adm'r of Westchester County</u>, 72 N.Y.2d 1, 8, 526

N.E.2d 4, 6-7, 530 N.Y.S.2d 513, 516 (1988) (stating that "[t]he question of whether a member

or group of society owes a duty of care to reasonably avoid injury to another is of course a

question of law for the courts"). In general, New York common law "does not impose a duty to

control the conduct of third persons to prevent them from causing injury to others; liability for

the negligent acts of third persons generally arises when the defendant has authority to control the

actions of such third persons." Purdy v. Public Adm'r of Westchester County, 72 N.Y.2d at 8,

526 N.E.2d at 7, 530 N.Y.S.2d at 516; see also D'Amico v. Christie, 71 N.Y.2d 76, 87-90, 518

N.E.2d 896, 901-02, 524 N.Y.S.2d 1, 6-8 (1987).

The courts have, however, imposed a duty of care to control the conduct of others "where

there is a special relationship: a relationship between defendant and a third person whose actions

expose plaintiff to harm such as would require the defendant to attempt to control the third

person's conduct; or a relationship between the defendant and plaintiff requiring defendant to

protect the plaintiff from the conduct of others." Purdy v. Public Admn. of City of Westchester,

72 N.Y.2d at 8, 526 N.E.2d at 7, 530 N.Y.S.2d at 516. An example of one such relationship

under New York law is the relationship between a common carrier and its passengers. Id.; see

also Sawyer v. Wight, 196 F. Supp. 2d at 226. The law provides that a common carrier, such as

an airline, owes its passengers a duty of reasonable care under the circumstances. See Plagianos

v. American Airlines, Inc., 912 F.2d at 59; Rainey v. Paquet Cruises, Inc., 709 F.2d 169, 170-72

(2d Cir. 1983). A common carrier is required to exercise that degree of care "which a reasonably

prudent carrier of passengers would exercise under the same circumstances, in keeping with the

danger and risks known to the carrier or which it should reasonably have anticipated." Lesser v.

Manhattan & Bronx Surface Transit Operating Auth., 157 A.D.2d 352, 355, 556 N.Y.S.2d 274,

276 (1st Dep't 1990) (internal quotation marks omitted).

The key issue is foreseeability. "No duty of care arises 'unless it is shown that [the

airline] either knows or has reason to know from past experience that there is a likelihood of

conduct on the part of third persons which is likely to endanger the safety of the [other passengers].'" Maysonet v. KFC, Nat'l Mgmt. Co., 906 F.2d 929, 931 (2d Cir. 1990) (quoting Nallan v. Helmsley-Spear, Inc., 50 N.Y.2d 507, 519, 407 N.E.2d 451, 458, 429 N.Y.S.2d 606, 613 (1980)) (alteration and internal quotation marks omitted); see also German-Bey v. Nat'l R.R. Passenger Corp., 703 F.2d 54, 55 (2d Cir. 1983) (noting that "[u]nder New York law, a carrier is generally not liable to its passengers for the misconduct of fellow passengers unless it anticipated or, in the exercise of reasonable care, ought to have anticipated the likelihood of injury" (footnote omitted)). To be liable for harm caused by other passengers, a common carrier must also have had "'the opportunity to control such persons'" and been "'reasonably aware of the need for such control.'" Maysonet v. KFC, Nat'l Mgmt. Co., 906 F.2d at 931 (quoting D'Amico v. Christie, 71 N.Y.2d at 85, 518 N.E.2d at 899-90, 524 N.Y.S.2d at 6).

### 2. Application

Here, plaintiff contends that the flight attendant was put on notice and should have foreseen that Passenger K was likely to endanger passenger safety because Passenger K was "an adult throwing paper objects at another passenger while in flight and acting strangely." (Pl.'s Mem. at 17). Plaintiff contends that having observed Passenger K's threatening "state of mind[] and mood," the flight attendant should have taken steps to prevent or stop the kicking incident and by failing to do so, breached the airline's duty of care to plaintiff. (Id. at 17-18).

Although there is a dispute as to whether the flight attendant actually observed the paper throwing incident, even if she had, there was no way that she should reasonably have anticipated that the passenger would engage in a violent attack upon plaintiff. In German-Bey v. Nat'l R.R.

Passenger Corp., the Second Circuit reversed a judgment in favor of plaintiff for personal injuries incurred during the course of an assault by another Amtrak passenger, finding that even though the other passenger was intoxicated, had a glazed look and was slurring his speech, and generally acting strangely, Amtrak had no reason to know that the passenger would suddenly attack the plaintiff. 703 F.2d at 54-55. "Without some reason to expect dangerous conduct from [the other passenger], . . . Amtrak was not negligent for failing to prevent it." Id. at 55. Similarly, in Scalise v. City of New York, 2 A.D.2d 984, 157 N.Y.S.2d 620 (2d Dep't 1956), aff'd, 3 N.Y.2d 951, 146 N.E.2d 786, 169 N.Y.S.2d 26 (1957), the City was found not liable where an intoxicated subway passenger was assaulted by another passenger, even though the conductor had received prior complaints about the inebriated passenger, and the intoxicated passenger and his assailant had been observed talking loudly and gesturing. The court held that there was "no proof to show that an assault by a third person upon the [intoxicated passenger] was imminent or even threatened." Id.; see also Maysonet v. KFC, Nat'l Mngmnt Co., 906 F.2d at 931-32 (finding that restaurant proprietor is not required to anticipate the sudden and unexpected acts of third persons where there is nothing in the person's prior conduct to suggest that other patron were at risk of harm); Panico v. Long Island R.R., 262 A.D.2d 293, 691 N.Y.S. 2d 556 (2d Dep't 1999) (holding that railroad was not liable for unforseeable act of third party in shooting a fellow passenger); Kaiser v. Delaney, No. 20353/1997 (N.Y. Sup. Ct. Suffolk Cty. Sept. 23, 2002) (finding that water taxi not liable because assault was not forseeable even though assailant was visibly drunk, rowdy, and using profane language in front of plaintiff's family), aff'd, 8 A.D.3d 238, 777 N.Y.S.2d 665 (2d Dep't 2004); cf. De Gelorm v. Pelc, 52 Misc. 2d 336, 275 N.Y.S.2d 446 (Onondoga Cty. Ct. 1966) (finding attack foreseeable where assailant had previously

threatened another patron with a beer bottle and struck plaintiff's brother in the face); Shank v. Riker Restaurants Assoc., 28 Misc.2d 835, 837, 216 N.Y.S.2d 118, 120 (Sup. Ct. N.Y. Cty.), aff'd, 15 A.D.2d 458, 222 N.Y.S.2d 683 (1st Dep't 1961) (finding forseeability where a noisy and belligerent patron "drop kicked" a glass of water and called plaintiff's friend vile names prior to the assault).

Here, the strange behavior of Passenger K in throwing objects at plaintiff, even assuming that it was initially observed by the flight attendant, was not sufficient to put the airline on notice that she might become violent and cause physical harm to plaintiff. There is no evidence that she was intoxicated, or that she was verbally abusive to the plaintiff or anyone else prior to the kicking incident. While throwing spit balls at another passenger is clearly not appropriate behavior and may suggest that the passenger was annoyed for some reason either generally or at the plaintiff specifically, it was not foreseeable that her behavior would escalate so rapidly into violence. Plaintiff suggests that the flight attendant had a duty to intervene after the throwing incident. (Pl.'s Mem. at 17-18). However, according to plaintiff's own account, the flight attendant spoke to Passenger K after the throwing incident and the offensive behavior stopped. Plaintiff has not suggested any alternative actions that could have been taken by the flight attendant at this point which would have prevented the kicking. Since it was not foreseeable that Passenger K would subsequently become violent, there was therefore no duty on the part of the flight attendant to take any additional steps.

To the extent that plaintiff is alleging that the flight attendant did not act appropriately once the kicking began, there is a disputed issue of fact as to whether or not the flight attendant saw any of the kicking incident. Plaintiff testified at her deposition that after she got out of her

seat because of Passenger K's kicking, she went to the back of the plane and reported the incident to the flight attendant, who "said she saw what happened." (Whitney Tr. at 18). Asked how much of the incident the flight attendant indicated that she saw, plaintiff responded, "She said that she had [seen] her kicking my seat." (Id. at 19). Plaintiff suggests that the flight attendant therefore had a duty to intervene and stop the kicking. (Pl.'s Mem. at 18). The flight attendant denies that she observed the kicking (Saunders Tr. at 31), and plaintiff gave conflicting testimony, stating that during the kicking incident, the flight attendants "were not in the aisle." (Whitney Tr. at 17). Asked further whether she knew "if the flight attendants were in position to observe [the kicking] when it was occurring," she replied, "Not at that time." (Id.) However, even assuming the flight attendant told plaintiff she observed the kicking, the statement is too vague to establish that the flight attendant saw the violent actions soon enough to intervene. plaintiff fails to articulate what actions the flight attendants should have taken or what opportunity they had to prevent plaintiff's injuries. Although plaintiff does suggest that Passenger K could have placed in restraints[10] during the flight, she does articulate when that should have occurred. The evidence in the record is thus insufficient to establish that the flight attendant had a meaningful opportunity to prevent the harm to plaintiff inflicted by Passenger K.

Accordingly, because the Court finds as a matter of law that the airline could not have

---

[10]Plaintiff makes a vague allusion in her memorandum to the possibility of "detaining" Passenger K while aboard the flight. (See Pl.'s Mem. at 17-18). However, this reference refers back to defendant's memorandum (see Def.'s Mem. at 17), which in turn refers to plaintiff's deposition testimony. It should be noted that upon a full reading of the deposition testimony, it appears that plaintiff was most likely suggesting that Passenger K should have been detained at the end of the flight while passengers were disembarking, not that she should have been placed in restraints during the flight. Clearly, detention at the conclusion of the flight would not have prevented or mitigated plaintiff's injuries.

reasonably foreseen the kicking attack on plaintiff and therefore had no duty to control Passenger K, it is respectfully recommended that defendant's motion for summary judgment be granted.

D. Plaintiff's Expert

Defendant moves to preclude consideration of the testimony of plaintiff's expert, Dr. Michael Hynes on the grounds that his opinions fail to satisfy the requirements of Federal Rule of Evidence 702, and the holdings in Kumho Tire C., Lt. v. Carmichael, 526 U.S. 137, 156 (1999), and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). Defendant contends that although Dr. Hynes claims to be an expert in various aviation related areas, he has no specific experience with an assault by one passenger against another; does not recall any experience relating to cabin crew intervention in altercations between passengers; and has no recollection of any involvement in a similar case. In addition to his lack of expertise or experience in this area, defendant contends that there is no basis to support his opinion that there were alternate courses of action available to the defendant that were not only technically feasible, but also economically possible. Accordingly, defendant seeks to preclude consideration of Dr. Hynes' opinion for purposes of the summary judgment motion.

Given that the Court has recommended dismissal of plaintiff's claims on preemption grounds, or in the alternative on lack of foreseeability under state law, there is no need for the Court to consider the motion to preclude at this time. Moreover, even taking the expert's opinion into account, the Court has found as a matter of law that defendant breached no duty to plaintiff in this case.

Accordingly, it is respectfully recommended that the Court reserve decision on the

admissibility of Dr. Hynes' opinion at this time, subject to revisiting the question if and when the case survives summary judgment.

CONCLUSION

In conclusion, because the Court finds plaintiff's claims preempted by the ADA and because even if they are not preempted, the Court finds as a matter of law that defendant breached no duty to plaintiff, it is respectfully recommended that defendant's motion for summary judgment be granted. It is further respectfully recommended that decision be reserved on defendant's motion to exclude the testimony of Dr. Hynes.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b); Small v. Secretary of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
August 20, 2009

_____
Cheryl L. Pollak
United States Magistrate Judge