UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
DENISE WHITNEY,

                    Plaintiff,

                    -against

JETBLUE AIRWAYS CORPORATION,

                    Defendant.
-------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

07 CV 1397 (CBA)

On April 3, 2007, plaintiff Denise Whitney filed this action against JetBlue Airways Corp. ("JetBlue"), seeking damages for injuries incurred when a fellow passenger allegedly assaulted plaintiff during the course of a JetBlue flight. On April 29, 2008, this Court issued an Order awarding plaintiff counsel fees in connection with plaintiff's motion for sanctions based on the spoliation of certain evidence. (See Order at 11).[1] Pursuant to this Court's Order, plaintiff submitted the May 14, 2008 Declaration of Steven W. Teppler, Esq., plaintiff's counsel, in support of the request for attorney's fees, costs and expenses ("Teppler Decl."), along with a supporting Memorandum of Law. In his Declaration, counsel seeks a total fee of $21,802.50,

---

[1] The spoliation order stemmed from JetBlue's failure to maintain the original handwritten "Inflight Irregularity Report" ("IIR") prepared by the flight attendant documenting the incident. Although JetBlue produced one version of the IIR from JetBlue's electronic database, a second electronic version of the IIR, containing information not included in the first electronic IIR, was produced by defendant during the depositions of JetBlue's witnesses in September, 2007. (Order at 21). At the same time, defendant produced another document entitled "Inflight Incident Report," which was created over a year after the incident occurred, and a "draft" IIR handwritten by the flight attendant which was undated and differed from both versions of the electronic IIR. Thus, despite defendant's claim that the information in the original handwritten IIR that had not been preserved was "entered into JetBlue's Safety database for posterity," (Def.'s Resp. at 1), plaintiff justifiably was concerned about what was contained within the original report prepared by the flight attendant that may not have been transferred into the database.

1

plus travel expenses in the amount of $845.54 incurred in connection with litigation of the sanctions motion.[2]

## DISCUSSION

A. <u>Standards for Attorneys' Fees</u>

Rule 37(b)(2) of the Federal Rules of Civil Procedure authorizes a court to impose various sanctions when a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2); see also <u>Transatlantic Bulk Shipping Ltd. v. Saudi Chartering, S.A.</u>, 112 F.R.D. 185, 189 (S.D.N.Y. 1986) (holding that Rule 37(b) "provides for sanctions where a party fails to honor its disclosure obligations, especially after court orders"). It is clear that sanctions may be imposed when a party spoliates evidence in violation of a court order. See, e.g., <u>West v. Goodyear Tire & Rubber Co.</u> 167 F.3d 776, 779 (2d Cir. 1999) (citing <u>John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.</u>, 845 F.2d 1172, 1176 (2d Cir. 1988)). Even where there has been no explicit discovery order issued, the court, in its inherent power to control litigation, may impose sanctions for spoliation. See <u>West v. Goodyear Tire & Rubber Co.</u>, 167 F.3d at 779.

The imposition of sanctions for spoliation is designed to (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position [s]he would have been in absent the wrongful destruction of evidence by the opposing party.'" <u>West v. Goodyear Tire & Rubber</u>

---

[2]Plaintiff filed a notice of appeal on October 26, 2009. However, the district court retains jurisdiction over the motion for attorney's fees since it is a collateral matter. <u>Tancredi v. Metropolitan Life Ins. Co.</u> 378 F.3d 220, 225 (2d Cir. 2004).

2

Co., 167 F.3d at 779 (quoting Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998)); see also Update Art, Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 71 (2d Cir. 1988) (describing the three purposes behind sanctions under Rule 37: "First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve as a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault") (citing Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639 (1976) (per curium)).

Among the sanctions available under subsection (b)(2) of Rule 37 are the issuance of an order that certain designated facts be taken as established in accordance with the claim of the party obtaining the order, see Fed. R. Civ. P. 37(b)(2)(A); Santrayll v. Burrell, No. 91 CV 3166, 1998 WL 60926, at *3 (S.D.N.Y. Jan. 21, 1998) (noting the availability of this sanction but declining to impose it), or an order "prohibiting [the disobedient] party from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(B); accord Kang v. Lee, No. 96 CV 1145, 1997 WL 669787, at *3 (S.D.N.Y. Oct. 27, 1997). In lieu of or in addition to these sanctions, Rule 37 provides for the imposition of "reasonable expenses, including attorney's fees," caused by the spoliation, unless the court finds that "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d). See, e.g., Roadway Express, Inc. v. Piper, 447 U.S. 752, 763-764 (1980) (holding that "[b]oth parties and counsel may be held personally liable for expenses, 'including attorney's fees,' caused by the failure to comply with discovery orders"); Stanziale v. First Nat'l City Bank, 74 F.R.D. 557, 560 (S.D.N.Y. 1977) (imposing Rule 37 sanctions on the attorneys); Charron v. Meaux, 66 F.R.D. 64, 68-69 (S.D.N.Y. 1975) (imposing

Rule 37 sanctions on the party); Chesa Int'l., Ltd. v. Fashion Assocs. Inc., 425 F. Supp. 234, 237-38 (S.D.N.Y. 1977) (holding both the attorney and the party jointly liable for fees), aff'd, 573 F.2d 1288 (2d Cir. 1977).

Traditionally, when asked to calculate a reasonable attorneys' fee, courts first determined a "lodestar" figure by multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994); F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2d Cir. 1987); Cowan v. Ernest Codelia, P.C., No. 98 CV 5548, 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001) (applying New York law). In Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany and Albany County Board of Elections, 522 F.3d 182, 183-84 (2d Cir. 2008), the Second Circuit "'abandon[ed]' the 'lodestar' approach to awarding attorney's fees," Simmons v. New York City Transit Auth., 575 F.3d 170, 175 (2d Cir. 2009), and held that when assessing whether claimed legal costs are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay, "'bear[ing] in mind *all* of the case-specific variables'" that the courts have identified as relevant in setting a reasonable hourly rate. Id. at 172 (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 190) (emphasis in original).

In order to calculate the presumptively reasonable fee, the court must first determine a reasonable hourly rate for the legal services performed. Id. The Second Circuit has adopted the following factors, inter alia, to guide the court's inquiry as to what constitutes a reasonable hourly rate:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases . . . .

Id. at 187 n.3 (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989)). A number of recent cases have applied some of these Arbor Hill factors when awarding attorney's fees. See Vilkhu v. City of New York, No. 06 CV 2095, 2009 WL 1851019 (E.D.N.Y. June 26, 2009); see also Cruz v. Henry Modell & Co., Inc., No. 05 CV 1450, 2008 WL 905351, at *3 (E.D.N.Y. Mar. 31, 2008).

Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . ., the timing demands of the case, whether the attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether the attorney might have initially acted pro bono . . ., and other returns (such as reputation, etc.) the attorney might expect from the representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 184.

In awarding attorney's fees in the present case, the Court is guided principally by the fact that this discovery motion was a relatively simple legal matter, taking into account as well the attorney's degree of skill, and the Court's own experience dealing with similar issues.

B. Analysis

Plaintiff's counsel seeks an award of fees calculated on the basis of his established billing rate of $450 per hour. Plaintiff's counsel represents that he was admitted to practice in New York in 1981, joining the firm of Kamber-Edelson, LLC[3] as Senior Counsel in January 2008. Since 1996, plaintiff's counsel has focused his practice on evidentiary and discovery issues related to computer generated information, and he currently directs the eDiscovery activities at his firm. In connection with his practice, counsel has written and presented on issues related to electronic discovery and issues of authentication and is a co-author of a book on the issue. According to counsel, he has an established billing rate of $450 per hour, which he asserts is "reasonable in light of the rates charged by comparably skilled and experienced attorneys in New York City." (Pl.'s Mem.[4] at 5).

It is clearly the attorney's burden to maintain contemporaneous records, see F. H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d at 1265, and fee applications are subject to denial where the fees have not been adequately documented. See, e.g., Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d 47, 53 (2d Cir. 1992). With respect to the number of hours for which fees are sought, plaintiff's counsel has submitted contemporaneous time records setting forth the date services were rendered, the time spent, and a description of the work performed. See New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983). In total,

---

[3]The firm of Kamber-Edelson LLC has offices in Manhattan, but plaintiff's counsel appears to be principally located in Sarasota, Florida, and he has requested reimbursement for his travel expenses to and from Florida. (See discussion infra at 17).

[4]Citations to "Pl.'s Mem." refers to Plaintiff's Memorandum in Support of Declaration for Attorney's Fees, Costs and Expenses, filed May 14, 2008.

plaintiff's counsel seeks reimbursement for 48.45 hours[5] of time allegedly spent in connection with the sanctions motion. (Teppler Decl. at 3).

In opposing plaintiff's fee request, defendant argues that the fees requested "relate[] to JetBlue's inadvertent disposal of a single document," which JetBlue concedes should have been retained but which was produced in electronic versions transcribed from the handwritten document. (Def.'s Ltr. at 1, May 21, 2008). Defendant urges the Court to consider that there was no evidence to indicate that the missing version would have corroborated plaintiff's version of the events and that JetBlue produced all of the versions of the document, including the raw data from the database, none of which differed materially from one another. In addition, defendant argues that plaintiff's counsel failed to ask critical questions of the respective witnesses which JetBlue claims would have alleviated plaintiff's anxiety about the documents that were produced.

Plaintiff urges the Court to disregard JetBlue's attempt to relitigate the sanctions motion, pointing out that the document in question was destroyed more than one year after the action was commenced, more than one year after the effective date of JetBlue's document retention policy, and within days of the deadline for JetBlue's production in connection with Rule 26 discovery. (Pl.'s Ltr. at 2, May 28, 2008). Plaintiff further argues that it should be reimbursed for the additional four hours expended by counsel in conducting research and preparing the May 28, 2008 reply letter. (Id. at 1).

Defendant's counsel has raised a separate objection to the fee request, noting that

---

[5]The total amount of hours worked was derived from plaintiff's submitted timesheets. (Pl.'s Ex. A). They can also be calculated by dividing the total fee sought ($21,802.50) by counsel's fee rate ($450/hour).

plaintiff's counsel has included in the request for reimbursement time spent in connection with what plaintiff describes as JetBlue's "improper" refusal to respond to certain discovery requests. (Def.'s Ltr at 2). Defendant argues that it should not be required to compensate plaintiff for this time because defendant never refused to respond to the requests; it simply suggested that responses be deferred until after the spoliation motion was decided. Although the parties dispute whether JetBlue "refused" to respond or merely "suggested" a deferral (compare Pl.'s May 28 Ltr. at 3-4 with Def.'s May 21 Ltr. at 2-3), what is undisputed is that there has been no finding by this Court that defendant's conduct with respect to these requests warrants sanctions. The Court did order defendant to respond to the requests but did not make a finding that plaintiff was entitled to fees for time spent in connection with this issue, nor should such time be included in the fee award for the distinct issue of spoliation. Thus, the Court has subtracted out certain hours identified in the records as having been spent on this separate discovery matter.

1) Rate Requested

Defendant challenges the reasonableness of the rate requested by counsel, contending that, among other things, the Court should consider that this was not a complex or difficult issue and therefore Mr. Teppler's $450 per hour rate for directing e-Discovery activities at Kamber-Edelson LLC should not apply.

In determining the appropriate rate to be charged, the Second Circuit has indicated that courts may consider evidence of prevailing rates for similar services beyond the fee application itself. See Chambles v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989). In addition to the parties' evidentiary submissions, the Court may consider its own

experience and familiarity with the case and with rates generally charged. See Cruz v. Local Union No. 3, 34 F.3d at 1160 (noting, "[a] district court's 'choice of rates [is] well within [its] discretion'") (quoting Cabrera v. Jakobovitz, 24 F.3d 372, 393 (2d Cir. 1994), cert. denied, 513 U.S. 876 (1994)). To "inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence - - in addition to the attorney's own affidavits - - that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. at 896 n.11.

Here, plaintiff's counsel argues that because the fees requested are based on rates that have been previously paid by counsel's fee paying clients, there is a "a strong indication of what private parties believe is the 'reasonable' fee." Crescent Publ'g Corp., Inc. v. Playboy Enterprises, 246 F.3d 142, 151 (2d Cir. 2001). See Reid v. New York, 584 F. Supp. 461, 462 (S.D.N.Y. 1984) (finding the attorneys' customary rates to be "their market rates"); Andrews v. Koch, 554 F. Supp. 1099, 1101 (E.D.N.Y. 1983) (awarding fees in an Eastern District litigation based on the "hourly rates normally charged" by partners and associates in a Manhattan-based firm). In reviewing the fee application, the Court is mindful of Judge Posner's comment in In re Continental Illinois Securities Litig., 962 F.2d 566, 568 (7th Cir. 1992), where he stated:

> It is apparent what the district judge's mistake was. He thought he knew the value of the class lawyers' legal services better than the market did. . . . [I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order.

Defendant, however, challenges plaintiff's counsel's billing rate as too high for

comparable work in this district. See, e.g., Rotella v. Board of Education, No. 01 CV 0434, 2002 WL 59106, at *6 (E.D.N.Y. Jan. 17, 2002); see also Cruz v. Local Union No. 3, 34 F.3d at 1159 (noting that the rates charged must be "'in line with those [rates] prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation'") (quoting Blum v. Stenson, 465 U.S. 886, 896 n. 11 (1984)); Knoeffler v. Town of Manmakating, 126 F. Supp. 2d 305, 311 (S.D.N.Y. 2000). Indeed, the Second Circuit has recently clarified the "parameters of the 'forum rule,'" and reiterated its holding that in calculating the presumptively reasonable fee, "courts 'should generally use the hourly rates employed in the district in which the reviewing court sits.'" Simmons v. New York City Transit Auth., 575 F.3d at 174 (holding that when awarding attorney's fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located) (citations omitted); see also Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997) (quoting Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983)). The presumption, as explained by the court in Arbor Hill is that "'[w]e presume. . .a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally.'"[6] Simmons v. New York City Transit Auth., 575

---

[6]Although it is unclear on what basis this presumption developed, the statistics recently generated by the clerk of court in the Eastern District of New York demonstrate that currently 76% of the attorneys who appear in civil cases filed in this district are located outside the district. Only 22% of the civil attorneys who appear in this court are actually from the Eastern District, with nearly double that number – 43% – maintaining offices in the Southern District of New York. (Thirty three percent are attorneys who are from outside either district and one percent have an unknown office location). As the court in Gutman v. Klein, No. 03 CV 1570 (BMC), 2009 WL 3296072, *2 n.1 (E.D.N.Y. Oct. 13, 2009), noted, there are significant concerns raised by requiring litigants to justify their attorney selection by proving that a reasonable client would have selected a Southern District attorney because it would "'likely produce a substantially better net result.'" Numerous decisions have addressed the "uniquely permeable" nature of the border

F.3d at 174 (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 119 (2d Cir. 2007)).

In Simmons, the Second Circuit reversed the district court's award of attorney's fees, holding that the fee rates should be based on the average rates in the Eastern District of New York, where the case was litigated, even though the attorneys' offices were based in Manhattan, in the Southern District of New York. The Circuit explained that the forum rule may be overcome if the moving party can show that "a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." Id. In addition, the moving party must demonstrate "that use of in-district counsel would produce a substantially inferior result." Id. Thus, although courts may deviate from the forum rule where litigants can show that the case required "special expertise" beyond the competence of the forum's law firms, the Second Circuit emphasized in Simmons that such a deviation was "'the rare case'"and would only apply where the fee applicant could "clearly" establish that "'local counsel was unwilling to take the case or other special circumstances.'" Id. at 175 (citations omitted).

Since the Simmons case was decided after plaintiff's counsel filed his motion for attorney's fees, it has not been addressed in plaintiff's papers submitted in support of his request

---

between the Eastern and Southern Districts of New York, see, e.g., id. at *2; Luca v. County of Nassau, No. 04 CV 4898, 2008 WL 2435569, at *9 (E.D.N.Y. June 18, 2008); Nicholson v. Williams, No. 00 CV 2229, 2004 WL 4780498, at *11 (E.D.NY. April 5, 2004); New Leadership Comm. v. Davidson, 23 F. Supp. 2d 301, 304 (E.D.N.Y. 1998), and at this point, it is unclear exactly what the "reasonable hourly rate" in the Eastern District of New York might be. Prior precedent is of little value given that so many of this court's fee decisions have taken into account the reasonable fees charged by firms in both districts in determining an appropriate hourly rate. See discussion supra at 12.

11

for fees, nor was it addressed in defendant's response. Nevertheless, it is hard to see how plaintiff could satisfy the stringent standard set by the Circuit in order to overcome the forum rule in this case, particularly given the fact that this fee request arises in the context of a discovery dispute, and counsel was hired to represent plaintiff for all purposes, not just this spoliation motion. Moreover, absent a showing that hiring counsel from the Eastern District would have produced a "substantially inferior result" or that there was no attorney from this district willing to take on plaintiff's case, the plaintiff will have a nearly impossible time overcoming the forum rule. Simmons v. New York City Transit Auth., 575 F.3d at 175.

Therefore, even though plaintiff's counsel works for a Manhattan-based firm, Kamber-Edelson LLC, and even though his clients may regularly pay his rate of $450 per hour, under Simmons, the Court is constrained to reduce his fee using the average rate for an attorney of similar expertise and experience based in the Eastern District of New York.

### 3) Determining the Appropriate Billing Rate

In reviewing the requested billing rate, the Court notes that billing rates in this district vary widely depending on the nature and difficulty of the case and the experience of the attorneys involved. As noted infra, many of the cases decided pre-Simmons awarded fees based on rates in the Southern District and are therefore no longer applicable. As a result, it is difficult to determine how much a Brooklyn attorney would have charged to handle this particular matter.

The defendant notes that plaintiff's counsel charged $400/hour for a case he handled in

12

2007. (Def.'s Let.[7] at 3). However, the Court is required to award attorney's fees at the current rate, not a historical one. See Lochren v. County of Suffolk, No. 08 CV 2723, 2009 WL 2778431 (2d Cir. Sept. 3, 2009). Indeed, one court in this district noted that "when reviewing caselaw that comments on prevailing market rates, a court must take into account the rapidity with which such rates can rise. Thus, a case decided even as recently as 2000 could be out of date as far as the rates are concerned." Tokyo Electron Arizona, Inc. v. Discreet Indus. Corp., 215 F.R.D. 60, 63 (E.D.N.Y. 2003).

After Simmons, rates of $300 to $400 per hour for partners have been considered reasonable in the Eastern District. Gutman v. Klein, No. 03 CV 1570, 2009 WL 3296072, at *3 (E.D.N.Y. Oct. 13, 2009) (awarding attorney's fees due to spoliation of evidence). See also Melnick v. Press, No. 06-CV-6686, 2009 WL 2824586, at *9 (E.D.N.Y. Aug. 28, 2009) (holding that rates in the Eastern District vary from $200 to $375 per hour for partners and $100 to $295 per hour for associates); Moran v. Sasso, No. 05 CV 4716, 2009 WL 1940785, at *4 (E.D.N.Y. July 2, 2009) (stating that in the Eastern District of New York, reasonable hourly rates have ranged from $200 to $350 for partners and $200 to $250 for senior associates); Duverger v. C & C Duplicators, Inc., No. 08-CV-0721, 2009 WL 1813229, at *2 (E.D.N.Y. June 25, 2009) (stating that rates from $200 to $350 for partners, $200 to $250 for senior associates are reasonable); Rodriguez v. Pressler & Pressler, LLP, 06 CV 5103, 2009 WL 689056 at *1 (E.D.N.Y. March 29, 2009) (holding that hourly rates of $450 and $300 were reasonable for an "Fair Debt Collection Practices Act" case). At the same time, another recent case applying

---

[7]Citations to "Def.'s Let." refers to defendant's letter in opposition to plaintiff's motion for attorney's fees, filed on May 21, 2008.

13

Simmons found that plaintiff's requested hourly rates of $450 to $505 for a partner with twenty years of experience and $375 to $480 for a senior associate were unreasonably high. Motorola Inc., v. Abeckaser, No. 07 CV 3963, 2009 WL 2568529, at *4-5 (E.D.N.Y. Aug. 5, 2009); see also GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim, No. 04 CV 5300, 2009 WL 3241757 (E.D.N.Y. Sept. 30, 2009) (setting a rate of $275 per hour where the partner had 25 years of experience and worked in a small firm of 10-12 people). Thus, the rates applied in this district have ranged widely depending on the nature of the firm, the experience of the lawyer and the type of case.

In this case, plaintiff's counsel has been practicing for 28 years and is currently a partner in a relatively small firm, consisting of between 15 and 20 lawyers. Although counsel has focused on "evidentiary and discovery issues relating to computer generated information" for 13 years and the spoliation issue here involved to some extent the recovery of electronic copies of the flight attendant's handwritten notes, plaintiff's counsel was not retained solely for the issue of pursuing this spoliation question and therefore the higher fee rate cannot be justified on that ground alone. (Pl.'s Mem. at 4). In the instant matter, counsel was representing plaintiff on a contingent fee basis and was ultimately unsuccessful in winning the case or negotiating a settlement. Taking all of the Arbor Hill factors into account, and given that counsel's normal rate of $450 per hour may derive, in part, from his firm's location in Manhattan (even though counsel is based in Sarasota, Florida), an hourly rate of $350 per hour seems more appropriate for the Eastern District.

2) <u>Number of Hours Spent</u>

Defendants also challenge the reasonableness of the number of hours spent, suggesting that the Court should set an appropriate percentage reduction. The Court agrees.

The law is clear that in reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours." <u>Quaratino v. Tiffany & Co.</u>, 166 F.3d 422, 425 (2d Cir. 2009) (citing <u>Hensley v. Eckerhart</u>, 461 U.S. at 434). In evaluating time sheets and expense records, some courts prior to <u>Arbor Hill</u> have dealt with the problem posed by excessive or redundant billing by simply subtracting the redundant hours from the amount of hours used to calculate the lodestar. <u>See, e.g.</u>, <u>Fernandez v. North Shore Orthopedic Surgery & Sports Medicine, P.C.</u>, No. 96 CV 4489, 2000 WL 130637, at *6 (E.D.N.Y. 2000); <u>see also</u> <u>Ruggiero v. Krzeminski</u>, 928 F.2d 558, 564 (2d Cir. 1991) (affirming the lower court's decision to subtract 32 hours for irrelevant work and for work performed on post-trial motions before calculating the lodestar). However, the Second Circuit has stated that the district court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items." <u>Lunday v. City of Albany</u>, 42 F.3d 131, 134 (2d Cir. 1994); <u>see also</u> <u>Daiwa Special Asset Corp. v. Desnick</u>, No. 00 CV 3856, 2002 WL 31767817, at *5 (S.D.N.Y. Dec. 3, 2002) (reducing fee award by 50% due in part to excessive billing). Particularly where, as here, the billing records are voluminous, "it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent." <u>Amato v. City of Saratoga Springs</u>, 991 F. Supp. 62, 65 (N.D.N.Y. 1998) (citing <u>Clarke v. Frank</u>, 960 F.2d 1146, 1153 (2d Cir. 1992). The court in <u>Daiwa Special Asset Corp. v. Desnick</u> also recognized that what may be "reasonable" attorney's

fees and expenses in the context of an order requiring a losing party to pay the prevailing party in a litigation "is not the same as the reasonableness of a bill that a law firm might present to its own paying client." 2002 WL 31767817, at *2 (citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986)). Thus, "[i]n calculating the number of 'reasonable hours,' the court looks to 'its own familiarity with the case . . . and its experience generally as well as to the evidentiary submissions and arguments of the parties.'" Clarke v. Frank, 960 F.2d at 1153 (internal citations omitted).

Accordingly, courts have used percentage reductions "as a practical means of trimming fat from a fee application." New York Ass'n Retarded Children v. Carey, 711 F.2d at 1146 (finding percentage reductions to be an acceptable means for reducing fee applications); see also Tokyo Electron Arizona, Inc. v. Discreet Industries Corp., 215 F.R.D. at 64-65 (applying percentage reduction to excessive fee application); Rotella v. Board of Education, 2002 WL 59106, at *3-4 (applying percentage reduction to fees of several attorneys for excessive and redundant billing); Quinn v. Nassau County Police Dep't, 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another by 30% for unnecessary and redundant time); Perdue v. City Univ. of New York, 13 F. Supp. 2d 326, 346 (E.D.N.Y. 1998) (imposing a 20% reduction for redundancy); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (deducting 40% of plaintiffs' hours, finding that "the use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work").

As noted infra at 6, plaintiff seeks reimbursement for 48.45 hours of time allegedly spent on this spoliation issue. He also seeks reimbursement for four hours drafting the reply to defendant's letter brief in opposition to the declaration for attorney's fees, which would bring his

total to 52.45 hours of work. Based on a review of plaintiff's counsel's time records, it appears that counsel spent almost 9 hours reviewing the deposition transcripts, over 4 hours on research, and over 4 hours drafting the initial letter motion. He spent another 3 hours reviewing defendant's responses and documents and over 4 hours drafting the reply on the motion for sanctions. The remainder of the time amounts to approximately 24 hours spent on emails, client conferences, and certain services which appear to have been performed in connection with the plaintiff's request for discovery. Unfortunately, it is unclear from the time entries what was involved in some of these emails and client conferences and the vagueness of the entries hinders the Court's ability to determine if they were in fact related solely to the spoliation issue or whether they were reasonable. At the outset, the Court has deducted 2.35 hours from the total for time spent on defendant's request to postpone the responses to certain discovery requests until after a ruling on the spoliation issue. As noted infra at 7-8, this time was not intended by this Court to be included as subject to the sanctions order.

Moreover, being familiar with the issue and having considered the papers submitted by the parties, the Court concludes that the number of hours is excessive in light of the nature of the issue. Having reviewed the time entries, this Court finds that a fair and reasonable means for adjusting for the vagueness and for the excessive billing, is to reduce the total adjusted hours for which fees are to be awarded by 25%. Deducting 2.35 hours from counsel's request for 52.45 hours of work, leaves a total request of 50.1 hours. That number will be reduced to 37.57 hours for purposes of calculating a fee, a 25% reduction. Using an hourly rate of $350.00, the Court respectfully recommends that counsel be awarded $13,149.50 in attorney's fees.

3) <u>Travel Time and Expenses</u>

With respect to travel, plaintiff's counsel has voluntarily waived attorney's fees for eight hours of travel time incurred while traveling from Florida to attend a status conference on September 25, 2007 and the motion hearing on January 11, 2008. (Teppler Decl. at 1.)

However Plaintiff's counsel does request reimbursement for $845.54 in travel expenses.[8] This includes hotel accommodations in New York for one night from January 10-11, 2008 at $110.14, the price of two round-trip flights from Sarasota, Florida to New York at a cost of $188.80 and $196.60 respectively for two separate conferences in the Eastern District, and taxi charges totaling $350 incurred during both trips to New York. Under this Court's prior Order of April 29, 2008, only costs for the second trip are subject to compensation since the first trip would have occurred even in the absence of the spoliation issue (as it had been scheduled at the initial conference on June 18, 2007). As a result, this Court awards $496.96 in travel costs.

## CONCLUSION

Accordingly, it is respectfully recommended that plaintiff's counsel be awarded $13,149.50 in attorney's fees and $496.96 in travel expenses for a total of $13,646.46.

Any objections to this Report and Recommendation must be filed with the Clerk of the

---

[8] Given the presumption that attorneys who appear before this Court should have offices in this district, the Court questions whether travel expenses for out-of-district attorneys should ever be compensable absent a showing of special circumstances in accordance with <u>Simmons</u>. The Third Circuit has held that "under normal circumstances, a party that hires counsel from outside of the forum of the litigation may not be compensated for travel time, travel costs, or the costs of local counsel" unless the party can make a showing that forum counsel were unwilling to represent them. <u>Hahnemann University Hosp. v. All Shore, Inc.</u> 514 F.3d 300, 312 (3rd Cir. 2008) (citations omitted). However, since the Second Circuit does not appear to have addressed this issue, the Court recommends an award of travel expenses as detailed herein.

Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(d), 72; Small v. Secretary of Health & Human Servs., 892 F. 2d 15 (2d Cir. 1989).

The clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
October 30, 2009

Cheryl L. Pollak
United States Magistrate Judge